IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-392 |
| SHAHIDUL GAFFAR | : | |

GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

I.     INTRODUCTION

Defendant SHAHIDUL GAFFAR has informed the government that he wishes to plead guilty to Count One of the Information filed in this case, charging him with conspiracy to commit a crime against the United States, in violation of 18 U.S.C. § 371, arising from his agreement with other individuals to provide material support to a designated foreign terrorist organization, namely, the Islamic State of Iraq and al-Sham, also known as ISIS or ISIL (hereinafter, "ISIS").

II.    MAXIMUM PENALTIES

The Court may impose the following maximum sentence: 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment. Further, the defendant's supervised release may be revoked if its terms and conditions are violated, in which case the original term of imprisonment may be increased by up to 2 years.

III.   PLEA AGREEMENT

The parties have stipulated in the plea agreement that: the base offense level is 26, pursuant to USSG § 2M5.3; the offense is a felony that involved or was intended to promote a Federal crime of terrorism and, thus, a 12-point enhancement to the offense level is warranted pursuant to § 3A1.4(a); the defendant has demonstrated acceptance of responsibility for his

1

offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a); and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.1(b).

Additionally, the plea agreement contains an appellate waiver, in which the defendant has voluntarily and expressly waived all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution.

VI.  ELEMENTS OF THE OFFENSE

In order to prove the defendant violated 18 U.S.C. § 371, the government must prove the following elements beyond a reasonable doubt:

1.  The defendant conspired with at least one other person to do an unlawful act, in this case to provide material support to a foreign terrorist organization;

2.  The defendant did so knowingly; and

3.  An overt act was knowingly committed in furtherance of the conspiracy.

The "unlawful act" in this case is providing material support to a Foreign Terrorist Organization, a violation of 18 U.S.C. § 2339B, which has the following elements:

1.  The defendant knowingly provided a foreign terrorist organization with one or more individuals (who may be or include the defendant) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization;

2. The defendant knew that the organization was a designated terrorist organization, or that the organization had engaged or was engaging in terrorist activity;

3. One of the jurisdictional requirements is met:

   A. The defendant is a national of the United States or a permanent resident alien;

   B. The defendant is a stateless person whose habitual residence is the United States;

   C. After the conduct required for this offense occurred, the defendant was brought into the United States or found in the United States, even if the conduct required for this offense occurred outside the United States;

   D. The offense occurred in whole or in part within the United States;

   E. The offense occurred in or affected interstate or foreign commerce; or

   F. The defendant aided or abetted any person over whom jurisdiction exists under 18 U.S.C. § 2339B(a) or conspired with any person over whom jurisdiction exists under 18 U.S.C. § 2339B(d) to commit an offense.

V. FACTUAL BASIS FOR THE PLEA

If this case were to go to trial, the government would prove each element of the offense beyond a reasonable doubt. The government would introduce witness testimony as well as electronic and documentary evidence to prove that defendant SHAHIDUL GAFFAR knowingly participated in a conspiracy to provide material support and resources to ISIS, a Foreign Terrorist Organization, that he knew ISIS was engaged in terrorist activity, and that he was a naturalized

citizen of the United States. The government would also prove every Overt Act listed in the Information. In summary, the government would prove the following:

SHAHIDUL GAFFAR was born in Bangladesh and became a naturalized United States citizen in 2002. From at least 2013 to 2016, SHAHIDUL GAFFAR and his wife, NABILA KHAN, lived in the Eastern District of Pennsylvania where they operated a small business and raised their children. During the offense conduct, KHAN's two brothers, JK and IK, became radicalized and decided to travel to Syria to fight in support of the Islamic State of Iraq and al-Sham ("ISIS") - a designated Foreign Terrorist Organization under the laws of the United States. Defendants SHAHIDUL GAFFAR and NABILA KHAN provided and attempted to provide financial support to JK and IK for the purpose of JK and IK traveling to Syria to join ISIS fighters.

NABILA KHAN first learned of JK's intention to travel to Syria in late September 2014. In October 2014, KHAN exchanged private electronic messages with a family member in which they discussed how KHAN and her family could support JK's travel to Syria. In January 2015, KHAN requested that a family member sell KHAN's gold jewelry in Bangladesh and give the proceeds to JK for his travel to Syria. Later that month, KHAN traveled to Bangladesh to see JK and wish him farewell before his departure for Syria in early February 2015.

On or about February 6, 2015, SHAHIDUL GAFFAR exchanged multiple private messages with KHAN's mother ("YPK") discussing JK's departure for Syria to join ISIS, including the following statements as translated into English in part:

> GAFFAR: Peace be unto you Ma. How are you? May Allah give you and father lots of strength if Allah wills.

4

| | |
|---|---|
| YPK: | Amen. Peace be unto you. How are you? Babu [GAFFAR] pray that I don't get defeated by Satan at the time of death. From your heart pray for [JK]. |
| GAFFAR: | If Allah wills Ma. May Allah [g]rant [JK] highest status. Be [p]roud mother for the noble cause and for the sake of Allah!!! |

In February 2015, KHAN's other brother, IK, who had resided with KHAN and GAFFAR in the Eastern District of Pennsylvania for eight months to attend school, departed the United States and returned to the Khan family home in Bangladesh. On February 23 and 24, 2015, GAFFAR exchanged multiple messages with IK, discussing IK's return to Bangladesh and GAFFAR's feelings about being left behind in "the land of great unbelievers." Later that month, KHAN, who was still in Bangladesh, observed IK watching videos featuring Anwar al-Awlaki, a specially designated global terrorist under Executive Order 13224 as a "key leader" of a foreign terrorist organization that justified violent jihad against the United States, and videos regarding death and paradise. From March through July 2015, GAFFAR sent multiple wire transfers to IK in Bangladesh. These funds had multiple purposes, but one purpose was to support IK's travel to Syria to join ISIS.

On or about June 30, 2015, GAFFAR sent an electronic message to KHAN, which read in part, as translated, "Let [IK] know that I will manage and send 3000 dollars if Allah wills. Let's help him, my love, for the good cause who knows that might be enough to get forgiveness from Allah and accept[ance] [in]to heaven." On or about July 1, 2015, KHAN sent GAFFAR a message which read, as translated in part: "[IK] said if everything goes smoothly, he will leave [for Syria] next week." In response, GAFFAR sent KHAN an online newspaper article about a family of 12 who traveled from the United Kingdom to live with ISIS in Syria. On July 2, 2015, KHAN and GAFFAR exchanged messages and discussed IK's departure to Syria to join ISIS.

5

GAFFAR stated, as translated in part: "But one thing makes [all] of us strong, we are not losing him [IK] rather [a]ppreciating for the cause of Allahs work." GAFFAR continued, "May Allah give all of us strength to handle our emotions. I feel bad for mom and dad, at the same time, I feel very proud. [W]hat a lucky mom and dad."

On July 3, 2015, GAFFAR sent KHAN an electronic message, stating, as translated: "But what we can do is to [a]ppreciate and be proud of his [IK's] decisions." GAFFAR continued, "May Allah [a]ccept him and may his [a]cceptance be the guidance for our desire to enter [h]eaven as well." KHAN replied, as translated, "Amen." GAFFAR then commented that it was "cool" that KHAN was able to observe IK's radical Islamist "changes" from "beginning to end." KHAN then remarked that she hoped their action in joining ISIS would grant JK and IK "higher status" in heaven.

On July 7, 2015, IK departed Bangladesh for Syria. The next day, GAFFAR and KHAN discussed (via electronic messages) how defendant Khan had tried to give IK more money right before he left. On July 16, 2015, KHAN exchanged multiple private electronic messages with a family member, discussing IK's arrival in Syria and reunion there with JK.

V.	CONCLUSION

    Based on the above, the Court should accept the defendant's guilty plea.

                                    Respectfully submitted,

                                    WILLIAM McSWAIN
                                    United States Attorney

                                    <u>s/ Sarah M. Wolfe</u>
                                    SARAH M. WOLFE
                                    ROBERT J. LIVERMORE
                                    Assistant United States Attorneys

Dated:	November 16, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Government's Change of Plea Memorandum has been served by e-mail upon the following:

>Elizabeth Toplin, Esquire
>Federal Defenders' Association
>601 Walnut Street, Suite 540 West
>Philadelphia, PA 19106

>s/ Sarah M. Wolfe
>SARAH M. WOLFE
>Assistant United States Attorney

DATED:  November 16, 2020